UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:20 CV 127 |
| | ) | |
| CAREY RAY | ) | (arising from No. 2:12 CR 171) |

**OPINION and ORDER**

**I.   BACKGROUND**

When he was 29, defendant Carey Ray started to chat over the internet with a 14-year-old girl from Indiana. *United States v. Ray*, 831 F.3d 431, 434 (7th Cir. 2016). He claimed that he believed her to be older at first, but she eventually admitted her age. At their first in-person meeting, defendant plied her with marijuana and cognac, and at their second he took her to an Illinois motel which he rented for a four-hour block of time. *Id.* At the hotel, marijuana and alcohol were followed by sexual intercourse. *Id.*

Defendant was charged with violating 18 U.S.C. § 2423(a) by transporting an individual across state lines with intent that she engage in sexual activity that would have been Aggravated Criminal Sexual Abuse under Illinois law. (DE # 15.) After a four-day trial, a jury found defendant guilty (DE # 103), and the court sentenced defendant to serve a 320-month term of imprisonment. (DE # 148.)

On appeal, defendant argued that the evidence was insufficient to show that, when he crossed the state border, he intended to have sex with the victim. *Ray*, 831 F.3d at 434. The Seventh Circuit Court of Appeals reviewed the evidence in the case, which

demonstrated that defendant had raised the possibility of sex with the victim, and "practically the first thing he did on arriving in Illinois was rent a motel room (booked for a four-hour stay)." *Id.* The Seventh Circuit further summarized that, after the victim became woozy from marijuana and cognac, defendant forced himself on her. *Id.* When she said that she was not ready, he replied: "I paid for this room. I'm gonna get what I want." *Id.* Based on this evidence, the Seventh Circuit held, "the jury was entitled to infer that Ray knew when he drove into Illinois what he wanted and planned to do." *Id.* The Seventh Circuit affirmed defendant's conviction, but remanded for resentencing. *Ray*, 831 F.3d 431. At resentencing, the court imposed a 292-month term of imprisonment. (DE # 207.)

Now before the court is defendant's petition under 28 U.S.C. § 2255 to vacate his sentence. (DE # 221.) The petition was fully briefed and ripe for ruling on December 6, 2023. (DE # 259.) For the following reasons, the petition is denied.

## II.    LEGAL STANDARD

A Section 2255 petition allows a person in federal custody to attack his or her sentence on constitutional grounds, because it is otherwise illegal, or because the court that imposed it was without jurisdiction. 28 U.S.C. § 2255(a). Motions to vacate a conviction or correct a sentence ask a court to grant an extraordinary remedy to a person who has already had an opportunity for full process. *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006).

2

### III. DISCUSSION

#### A. *Procedural Default*

To the extent that defendant claims that: (a) his Sixth Amendment rights were violated because trial counsel had a conflict of interest when she hired another attorney as "second-chair" counsel instead of retaining and presenting several experts and witnesses, (b) he was deprived of his Fifth Amendment rights to due process when trial counsel waived his presence during various parts of trial proceedings, and (c) he was deprived of due process when jury instructions were changed, these claims are procedurally defaulted.

A claim that could have been, but was not, brought on appeal is procedurally defaulted and cannot be raised in a Section 2255 proceeding. *White v. United States*, 8 F.4th 547, 555 (7th Cir. 2021). Where, as here, a defendant has procedurally defaulted on a claim, he may obtain relief only if he can show either cause and prejudice for the default (*i.e.,* some external obstacle prevented defendant from presenting his claim on appeal) or that a failure to grant him relief would result in a fundamental miscarriage of justice (*i.e.,* when a defendant is actually innocent). *Bintz v. Bertrand,* 403 F.3d 859, 863 (7th Cir. 2005).

The government raised procedural default as an affirmative defense to defendant's Section 2255 petition. (DE # 254.) In his reply brief, defendant is silent on the issue. (DE # 259.) However, even if defendant had contested the government's arguments regarding procedural default, he cannot show cause for defaulting. All of the

3

circumstances underlying the claims outlined above were known to plaintiff at the time of trial and during the appeals process and could have been raised sooner.

Further, defendant cannot demonstrate actual innocence to defeat default.[1] To do so defendant would have had to demonstrate that "'in light of [ ] new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). This is a "demanding" and "seldom met" standard. *McQuiggin*, 569 U.S. at 386 (citing *House v. Bell*, 547 U.S. 518, 538 (2006)). To mount a credible claim of actual innocence, a petitioner must present new, reliable evidence that was not presented at trial, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence. *House*, 547 U.S. at 537 (citing *Schlup*, 513 U.S. at 324); *see McDowell v. Lemke*, 737 F.3d 476, 483–84 (7th Cir. 2013) (quoting *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) ("[A]dequate evidence is 'documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim.'")). The actual innocence exception to procedural default applies to an "extraordinary case" and does not extend to petitioners "whose guilt is conceded or plain." *Schlup*, 513 U.S. at 321.

---

[1] A claim of innocence in this context is not itself a constitutional claim which might warrant relief, but instead a "gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Schlup v. Delo*, 513 U.S. 298, 315 (1995).

In this case, defendant does not directly argue that any such evidence exists for the purposes of avoiding default. However, to give defendant the full benefit of the doubt the court will construe defendant's filings liberally and extrapolate arguments on his behalf. Specifically, defendant might have argued that – for procedural default purposes – his case would have turned out differently if a cell phone or "sexual expert" had testified on his behalf. (*See* DE # 259 at 3.) Similarly, defendant might have claimed he is actually innocent for purposes of avoiding procedural default because, if the victim's best friend would had testified that the victim was a habitual liar, "there would have been nothing else to do but acquit." (*See* DE # 259 at 9.) Finally, defendant might have argued that his actual innocence could be proven for procedural default purposes if the *real* individual who drove the victim across state lines (purportedly the victim's friend Cynthia) had been put on the stand to testify. (*See* DE # 211 at 15.)

These arguments, had they been made by defendant to fend off procedural default, are a far cry from meeting the "seldom met" standard of actual innocence. *McQuiggin,* 569 U.S. at 386. Indeed, the evidence would have been testimonial and speculative. Further, such testimonial evidence would only have aided defendant if the jury had credited defendant's witnesses and discredited the testimony of the government's witnesses (including the victim) as well as all of the other evidence in the case which supported defendant's conviction. It is also worth mentioning that defendant's trial counsel *did* succeed in excluding evidence related to defendant's sexual history. (DE # 78.) Had defendant's counsel offered a "sexual expert" as defendant might have argued she should have, it may have "opened the door" to the

5

admission of evidence regarding defendant's sexual past, possibly to defendant's detriment. Whether considered in isolation or together, it simply is not evident that the testimony of the aforementioned witnesses would have served to support defendant's case at all, much less demonstrate actual innocence.

In short, because defendant would not have been able to present any valid grounds for avoiding procedural default in this case, his petition must be denied to the extent it is based on the aforementioned Fifth and Sixth Amendment claims.

### B. Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel constitute an exception to the general rule of procedural default. In other words, ineffective assistance claims may be raised initially under Section 2255. *Massaro v. United States*, 538 U.S. 500, 504 (2003). To establish a claim of ineffective assistance, the defendant must show: (1) that trial counsel's performance fell below objective standards for reasonably effective representation, and (2) that counsel's deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

To satisfy the first element of the test, the defendant must direct the court to specific acts or omissions by his counsel falling outside the wide range of professionally competent assistance. *Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013). The court's assessment of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* To satisfy the second element, the defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the

proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable. *Id.*

Defendant claims that his trial counsel provided constitutionally deficient assistance in numerous ways, each of which will be addressed in turn below, as well as in combination. These arguments are similar to some of those discussed in the previous section regarding potential procedural default arguments that defendant could have made. This time, however, the court addresses the arguments through the lens of the Sixth Amendment's right to effective assistance of counsel.

First, defendant argues that trial counsel should have called a cell phone tower expert to establish that defendant's cell phone did not cross state lines. (DE # 221 at 13.) However, this fact was conceded by the government's witness. (DE # 159 at 135.) The court cannot conclude that counsel's decision to not spend money and effort on securing and presenting an additional witness to establish a fact conceded by a government witness amounts to an act falling outside the wide range of reasonable professional assistance. *See Blake*, 723 F.3d at 879. Nor can it be said that defendant's trial would have turned out differently had trial counsel called an additional cell phone tower expert to testify to the same facts that were conceded by the government's witness. On the contrary, it is reasonable to conclude that no difference would have occurred in the outcome at all had trial counsel called a cell phone tower expert to testify.

Second, defendant argues that trial counsel should have been evaluated by a "sexual expert," and that expert should have been called to show that defendant did not

7

have willingness to cross state lines and violate federal law. (DE # 221 at 16.) Defendant's argument is entirely speculative; he presupposes that a "psychosexual evaluation" would show that he did not have "any abnormal sexual behavior," did not have a propensity to commit the crime, and was amenable to treatment. (DE # 221 at 31.) A petitioner's speculation regarding the testimony of an unnamed expert witness is not sufficient to raise an ineffective-assistance-of-counsel claim. *United States v. Anderson*, 61 F.3d 1290, 1299 (7th Cir. 1995); *United States v. Lawrence*, No. 16 C 5237, 2016 WL 7374275, at *3 (N.D. Ill. Dec. 20, 2016).

Third, defendant argues that trial counsel should have called "Liz" – one of his "star witnesses" – to testify. According to defendant, Liz was the victim's best friend, who would have "debunk[ed] the accuser's tale" (DE # 221 at 35) by testifying that the victim was a "habitual liar." (DE # 259 at 4.) According to defendant, Liz would have testified that the victim was "unusually happy" and unharmed after the alleged attack. (DE # 259 at 5.) Trial counsel informed defendant that she would not call Liz as a witness because "she 'didn't feel she would be conducive to our case'" and because trial counsel felt Liz was "mentally unfit." (*Id.*) According to defendant, trial counsel should have called Liz "even if it was just to discredit [the victim's] character." (DE # 259 at 4.)

Defendant has not submitted Liz's testimony, only his hypotheses and hopes as to how she might have testified. This is insufficient. *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable[.]").

8

Further, a "a lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review. The Constitution does not oblige counsel to present each and every witness that is suggested to him." *United States v. Williams,* 106 F.3d 1362, 1367 (7th Cir.1997) (internal citation and quotation marks omitted). In this case, trial counsel submitted to the court an FBI interview summary in which Liz actually corroborated much of the victim's version of events. (DE # 83 Ex. B.) Further, trial counsel informed defendant that she did not feel Liz was mentally fit to serve as a beneficial witness. (DE # 221 at 3.) Thus, the record indicates that trial counsel investigated Liz as a potential witness and ultimately decided, as a matter of strategy, not to call her to the stand. This decision does not amount to constitutionally ineffective assistance of counsel.

Fourth, defendant argues that trial counsel should have presented the theory that he did not actually drive the victim across state lines through the testimony of the "real" driver, a woman he thinks might be named "Cynthia." (DE # 221 at 48; DE # 259 at 7.) Defendant states that Cynthia is the one who actually drove the victim from Indiana to a parking lot in Illinois, where defendant then picked up the victim.[2] (*Id.*) Defendant further claims that he never got to clearly see or meet the driver because she stayed in her vehicle, and he could only see her reflection through her side mirror. (*Id.*) Defendant states that the victim told him that the driver met the victim on the internet and often drank and smoked with her. (DE # 259 at 7.) Again, this argument fails because

---

[2] At trial, the victim testified that defendant picked her up near her home in Indiana and drove her to a hotel in Illinois on October 8, 2012. (DE # 160 at 35, 54.)

9

defendant has not presented the putative witness's testimony. *Ashimi*, 932 F.2d at 650. Without knowing how Cynthia would actually testify, it is impossible to say whether trial counsel's decision to not call her as a witness amounted to ineffective assistance. Defendant does not even point to any evidence of Cynthia's existence, other than his own self-serving testimony, which will not suffice. *Id.* ("self-serving speculation will not sustain an ineffective assistance claim").

Fifth, defendant argues that trial counsel should not have spent his money to hire a "second-chair" attorney for purposes of his defense. Instead, defendant argues, trial counsel should have used that money to hire the aforementioned experts or prepare the aforementioned witnesses. As explained above, defendant cannot demonstrate that trial counsel provided ineffective assistance by failing to call any of the witnesses defendant identified. Thus, trial counsel could not have erred by hiring a second-chair attorney in lieu of devoting resources to the aforementioned witnesses.

Sixth, defendant argues that trial counsel provided ineffective assistance when she waived defendant's right to be present during various portions of trial proceedings. (DE # 221 at 18.) Defendant claims that his absence was involuntary and that the fairness of his proceedings was thwarted by trial counsel's brazen disregard for his right to be present. (*Id.*)

It is important to recall that defendant's arguments regarding his Fifth and Sixth Amendment rights to be present during his trial have been procedurally defaulted. Thus, the issue before the court is only whether defendant's Sixth Amendment *right to counsel* was violated when trial counsel waived defendant's right to be present. To

reiterate, a petitioner alleging ineffective assistance of counsel must establish both deficient performance as well as prejudice. *Strickland,* 466 U.S. at 687-88.

Though the question of whether defendant's right to be present during trial was violated is not precisely the issue before the court, as that argument has been procedurally defaulted, an examination of that right can nonetheless help "guide" the court in determining whether trial counsel's performance fell below an objective standard of reasonableness under *Strickland*. *Cuoco v. United States,* 208 F.3d 27, 31 (2d Cir. 2000). To this end, it is worth noting that a defendant has a right to be present at a proceeding whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge. *United States v. Gagnon,* 470 U.S. 522, 526 (1985).

These principles have been codified in Federal Rule of Criminal Procedure 43, which provides in pertinent part: "the defendant must be present at: . . . the initial appearance, the initial arraignment, and the plea; . . . every trial stage, including jury impanelment and the return of the verdict; and . . . sentencing." Fed. R. Crim. P. 43(a). The rule further states that "[a] defendant need not be present [when] the proceeding involves only a conference or hearing on a question of law." Fed. R. Crim. P. 43(b)(3). Additionally, "[i]f the defendant waives the right to be present, the trial may proceed to completion, including the verdict's return and sentencing, during the defendant's absence." Fed R. Crim P. 43(c)(2).

Defendant was not present at several points during his trial, each of which will be addressed in turn. First, trial counsel waived defendant's presence during the court's

11

preliminary discussion of trial procedures such as the statement of the case, voir dire questions, witness lists, etc. (DE # 159 at 2-9.) Defendant does not appear to take issue with his absence during this time, and rightly so. No reasonable argument could be made that his trial would have turned out any differently had he been present during these routine matters.

Defendant's second absence was during the jury instruction conference. While defendant was present for the lengthy discussion about each instruction and the parties' objections, the court asked defendant if he wanted to stay while the court made changes to the instructions. (DE # 161 at 188.) Defendant visibly conferred with trial counsel, and then trial counsel informed the court that defendant was "going to go with the marshals, Your Honor." (*Id.*) The conference continued the following morning, and the court, noting that defendant had already waived his right to be present for this portion of the proceedings, confirmed with trial counsel that she was waiving defendant's presence for the continued discussion about jury instructions. (DE # 162 at 2.) The court then modified an instruction about Illinois law, which both parties agreed needed to be changed. (*Id.* at 3-4.)

Notably, "the content of jury instructions is a question of law . . . within the [Rule 43] exception for 'a conference or hearing on a question of law.'" *United States v. Perez*, 612 F.3d 879, 883 (7th Cir. 2010). Therefore, defendant's absence from the jury instruction conference would not have violated Rule 43, though in this case the court sought a waiver through counsel, twice, out of an abundance of caution. That waiver was articulated by trial counsel, once with defendant standing next to her, and once the

following morning as the same proceedings regarding jury instructions continued. The court cannot conclude that trial counsel's performance fell below objective standards for reasonably effective representation either time.

Defendant was also absent from trial proceedings when the court read questions from the deliberating jury into the record and sorted out how to properly answer those questions. The jurors asked two questions regarding the Illinois statutes referenced by the indictment, and the lawyers for each side and the court agreed to clarify that that one federal charge existed and that they should continue deliberating. (DE ## 106, 108.) Again, the court cannot conclude that trial counsel's performance did not meet objective standards. The record shows that trial counsel effectively advocated for defendant during this time, lodging appropriate objections and refusing to acquiesce to certain language in the court's response to the jurors' questions. (DE # 162 at 94-96.) Nor can the court find that defendant was prejudiced by trial counsel's decision to waive defendant's presence; there is no reason to believe that defendant's trial would have turned out differently had defendant been in the room.

At this point, the court has examined all of defendant's individual arguments regarding deficiencies in his trial attorney's performance. However, "the Supreme Court insists that judges must not examine a lawyer's error (of omission or commission) in isolation. It is essential to evaluate the entire course of the defense, because the question is not whether the lawyer's work was error-free, or the best possible approach, or even an average one, but whether the defendant had the 'counsel' of which the sixth amendment speaks." *Stephenson v. Wilson*, 619 F.3d 664, 666 (7th Cir. 2010) (internal

citation and quotation marks omitted). This court has considered the cumulative effect of all the alleged errors defendant has identified. Even taken as a whole, defendant has not demonstrated that he was deprived of the 'counsel' guaranteed by the Sixth Amendment, or that there is a reasonable probability that the outcome of his case would have been different had his counsel raised the arguments he identifies.

Finally, pursuant to Section 2255 Habeas Corpus Rule 11, the court must consider whether to grant or deny a certificate of appealability. A court should issue such a certificate only if the movant has made a substantial showing of the denial of a constitutional right, that is, that reasonable jurists would find debatable whether the district court correctly resolved the issues or would conclude that those issues deserve further proceedings. 28 U.S.C. § 2255; 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 337-38 (2003). In light of the controlling case law, the conditions for the issuance of a certificate of appealability are not present in this case, and no certificate will issue.

## IV. CONCLUSION

For these reasons, defendant's Section 2255 petition (DE # 221) is **DENIED.**

**SO ORDERED.**

Date: July 3, 2024

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT